# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **DEBRA A. SCHULTZ**, By and Through her conservator, STEVE B. MORRIS, | Case No. 3:11-cv-1467-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION**, | |
| Defendant. | |

Timothy C. Bennett, Timothy Bennett, PC, 4248 Galewood, Lake Oswego, Oregon, 97035. Attorneys for Plaintiff.

Leah C. Lively and Amanda A. Bolliger, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., The KOIN Center, 222 SW Columbia Street, Suite 1500, Portland, Oregon, 97201. Attorneys for Defendant.

**SIMON, District Judge.**

Plaintiff Debra Schultz ("Plaintiff" or "Schultz") originally filed this lawsuit against

Wells Fargo in Multnomah County Circuit Court on or around November 16, 2011. Wells Fargo

removed the case to this Court on December 7, 2011. Schultz alleges Family Medical Leave Act

("FMLA") interference, FMLA retaliation, retaliation for opposing actions in violation of the FMLA, and wrongful discharge. Wells Fargo answered the allegations on December 21, 2011, and a stipulated protective order was entered on February 17, 2012. Discovery has been ongoing in this matter for more than sixteen months and under the protective order for approximately fourteen months.

Schultz recently filed a Motion to Compel, seeking fifteen categories of documents.[1] Dkt. 21. Schultz states that the requests are reasonably calculated to lead to the discovery of admissible evidence. Schultz provides the Court with extremely limited argument, no legal authority, and fails to provide the Court with copies of the responses and objections by Wells Fargo to the propounded requests for production.[2] Schultz's motion thus fails to comply with Local Rules 7-1 and 37-1. Because discovery has been ongoing for more than sixteen months and the Court recently established the current revised schedule in an effort expeditiously to resolve pending discovery disputes and move this case along, the Court will consider this motion on the merits. No further motions, however, are likely to be accepted that do not comply with Local Rules 7-1 and 37-1.

For the reasons discussed below, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART.

---

[1] Schulz moved to compel production of seventeen categories of documents, but the parties resolved their issues on two of the categories after the motion was filed.

[2] Wells Fargo provided the Court with copies of its responses and objections to all but three of the requests for production cited by Plaintiff in support of her motion. For the three requests for which copies of the original responses and objections were not provided, the Court determines Wells Fargo's objections from its brief in opposition to the Motion to Compel.

# BACKGROUND[3]

Schultz was employed by Wells Fargo for more than 30 years. Schultz took approved medical leave for approximately three months beginning in April 2007, for approximately four months beginning in April 2008, and for approximately 10 days in March 2009. After returning from her 2008 medical leave, Schultz asserts that she was inappropriately questioned about her private medical and personal information by Debi Klinetobe, the supervisor of Schultz's direct supervisor, Mark Trupp. Schultz also alleges that Klinetobe urged her to work part time or take further medical leave. Schultz complained about this conduct to Wells Fargo's then-human resources consultant, Theresa Kraljev.

On February 20, 2009, Trupp presented a "Memorandum of Understanding" to Schultz relating to the failure of her branch location to meet is sales goals in 2008 and establishing performance goals for 2009. In late March 2009, Trupp reassigned Schultz to a smaller branch location. At the time of her transfer, Schultz was demoted from Branch Manager 4[4] to Branch Manager 1, but her salary was kept at the higher Branch Manager 4 level.

In late October 2009, Ashley Johnson, a customer service manager in Schultz's new branch office, reported to Kraljev that Schultz loaned her own personal funds to a customer of Wells Fargo. Schultz asserts that she gave or loaned $200 to a long-term Wells Fargo customer who had special needs and mental challenges and had previously received special accommodation from Wells Fargo. Schultz states that she did not care if the $200 was ever repaid. Johnson's report was sent to Debi Wilkinson for investigation. Wilkinson concluded that

---

[3] The facts in this section are taken from Plaintiff's Amended Complaint, Plaintiff's Proposed Second Amended Complaint, and Defendant's brief in opposition to the Motion to Compel.

[4] Plaintiff references the title as both "branch manager" and "store manager." For consistency, the Court will reference the position as "Branch Manager" throughout this opinion.

Schultz had loaned personal funds to a Wells Fargo customer. Wells Fargo terminated Schultz effective November 11, 2009, stating that her termination was for violating Wells Fargo's Code of Ethics based on that loan.

## ANALYSIS

In her motion, Schultz does not structure her argument or identify her requests based on a corresponding number of the Fourth Set of Requests for Production propounded to Wells Fargo. Accordingly, the Court identifies the requests based on the number from Plaintiff's motion.

**A.  Requests 1b, 2c, 2d, 2e, 5a: Electronic Information**

**1.  Request 1b: Outlook calendar information**

Schultz moves to compel the production of Trupp's Outlook calendar entries for July 1, 2008 through December 31, 2008, and for September 1, 2009 through November 11, 2009. The only relevance asserted by Schultz is that Trupp stated he was on vacation in September 2008, during the time when Klinetobe allegedly had her conversation with Schultz that is at issue in this lawsuit. Schultz fails to demonstrate how Trupp's 2008 calendar entries are reasonably calculated to lead to admissible evidence. Accordingly, the motion is denied with respect to the 2008 requested calendar entries for Trupp.

With respect to Trupp's 2009 requested calendar entries, the Court finds that entries from October 2009 (when Johnson reported Schultz's alleged loan) to November 11, 2009 might contain information about meetings or telephone calls relating to Plaintiff and thus, may lead to the discovery of admissible evidence. Accordingly, those documents are discoverable.

Wells Fargo, however, states that the Outlook calendar entries from the requested time period are electronically stored information ("ESI") that were deleted well before the filing of this lawsuit, pursuant to Wells Fargo's regular document retention policy. Wells Fargo further states that this information was also deleted at around the same time from its backup tapes.

Schultz requests "emails retained on an electronic back up copy," but offers no evidence to rebut Wells Fargo's statements that the requested information was deleted years ago from the backup tapes under Wells Fargo's regular document retention policy.

The Supreme Court has explained that:

> "Document retention policies," which are created in part to keep certain information from getting into the hands of others . . . are common in business. It is, of course, not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances.

*Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005). Companies may comply with their ordinary document retention policies unless and until they are under a duty to preserve. A duty to preserve begins when a party reasonably knows or should have known that the evidence is relevant to anticipated litigation, even if the litigation has not yet been filed. *See, e.g., In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006); *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake*, 220 F.R.D. at 218.

Schultz provides no evidence or argument that Wells Fargo knew or should have known about potential litigation relating to her claims at the time the requested ESI was deleted pursuant to Wells Fargo's document retention policy. Accordingly, Wells Fargo was under no obligation to suspend its routine document retention policy at that time.

To the extent the October 2009 through November 11, 2009 Outlook calendar information of Trupp has been deleted, it is not required to be produced. If it is accessible through Trupp's current Outlook calendar, or if any copies were printed or otherwise retained in Wells Fargo's possession, custody, or control, those are ordered to be produced.

### 2. Requests 2c, 2d, 2e, and part of 5a: email correspondence

Schultz moves to compel email correspondence of various custodians from 2009. As noted above, Wells Fargo states that the ESI from this time period was deleted from both the active and backup systems through its regular document retention policy. Accordingly, this information is not in the possession, custody, or control of Wells Fargo, and Plaintiff's motion with respect to historical email correspondence that is no longer available is denied.

## B. Request 2a: Cell Phone Records of Trupp

Schultz moves to compel any and all documents that evidence the calls to and from Trupp's cell phone(s) used at any time for work-related purposes from November 1, 2009 through November 6, 2009. Schultz asserts that none of Wells Fargo's witnesses testified that they were the person who recommended that Schultz be fired, and that everyone testified at deposition that they could not recall who was involved in the decision, which was made during that time period.

Wells Fargo argues that this is ESI that was deleted and is no longer available. Wells Fargo also objects to producing the information as irrelevant, vague, ambiguous, overbroad as to time, overbroad as to geographic location, seeking documents outside the possession, custody, or control of Wells Fargo, unduly burdensome, seeking information of a third party not similarly situated to Schultz, and seeking private and confidential information of a third party.

The Court finds that the information sought might lead to admissible evidence in that it might show who Trupp spoke with and when during the time of the investigation and termination of Schultz, which might refresh the recollection of those witnesses. The Court fails to see how this necessarily is exclusively electronic information that would have been stored on Wells Fargo's computer system and deleted. Telephone bills can be mailed in hard copy, can be retained electronically by the telephone provider (and readily accessed by the customer), or can

Page 6 – Opinion and Order

be printed and placed in a paper file. Wells Fargo does not provide sufficient details regarding whether or how it retains its employees' cell phone bills for this Court to determine that the information is not available. The Court rejects the argument that this request is overbroad in time or scope, vague, ambiguous, or unduly burdensome. To the extent the request seeks information outside of Wells Fargo's possession, custody, or control, Wells Fargo is under no obligation to produce such information, unless Wells Fargo has the ability to access or obtain those records upon request of its cell phone carrier. Trupp is the direct supervisor of Plaintiff, and to the extent he had work-related telephone calls during the six days for which Plaintiff seeks documents, that information is relevant and the request is narrowly-tailored.

Wells Fargo is ordered to produce the requested cell phone records to the extent any are in its possession, custody, or control, or otherwise available to Wells Fargo.

## C.  Request 2b: Select Pages of Kraljev's Journal

Schultz requests to inspect the original of Kraljev's journal, from five pages before and five pages after Kraljev's notes regarding her interview of Schultz on November 5, 2009, and from five pages before and five pages after Kraljev's notes regarding the termination meeting held on November 6, 2009. Schultz asserts that the employees involved all testified with almost no memory of the approximately 20 minute conversation they had following the interview with Schultz. Wells Fargo argues that Schultz is not entitled to discovery about non-decision makers who are not similarly situated to her and adverse actions that are not at issue in her case.

Schultz fails to show the relevancy for the five-page before and after request.[5] It is the content of the pages of Kraljev's journal that determines the relevancy to this action, not the

---

[5] To the extent Schultz is arguing that counsel for Defendant cannot be trusted to produce all relevant pages and that an inspection is needed of nearby pages to reassure counsel that all relevant pages have been produced, Schultz fails to provide any evidence or argument to support such a contention.

proximity of certain pages to an interview with Schultz. Wells Fargo represented to the Court that it has produced all journal pages that "reference" Schultz. It is unclear whether Wells Fargo scanned the journal for Schultz's name and produced only those pages that contain her name, or if the journal was given a substantive review to determine whether a page may relate or refer to Schultz without specifically referencing her name. The Court holds that the latter pages, if any, are also relevant and discoverable.

Any and all notes in Kraljev's journal relating or referring to Schultz are relevant and related to the claims in this case, regardless of whether such notes are within five pages of the notes that were apparently already produced in this action. Thus, Wells Fargo is ordered to produce all pages of Kraljev's journal that relate or refer to Schultz (even if they do not specifically reference her by name), including but not limited to pages relating to her taking medical leave, the investigation of Schultz, meetings or telephone conversations relating, even in part, to Schultz, or the termination of Schultz. To the extent Schultz believes there are any legibility problems with the copies produced, Schultz shall then be entitled to an original inspection of the relevant pages.

**D.  Request 2f, 2g, and 2h: Outlook Calendars from 2012**

Schultz moves to compel Outlook calendar pages or other records of attendance at work for Trupp, Kraljev, and Wilkinson for December 2012. This request appears to relate to Schultz's contention that counsel for Defendant improperly informed counsel for Plaintiff that certain witnesses were unavailable for deposition when those witnesses were, in fact, available, in order to provide witnesses in a different order than requested by Schultz. Schultz provides no argument or authority as to why that contention, even if it were true, is relevant to the claims or defenses of

this lawsuit and is discoverable information. Schultz's motion is denied with respect to these requests.

### E.  Request 3a: Personnel Records of Ashley Johnson

Schultz moves to compel "every employment related document retained in Ashley Johnson's official, corporate personnel file" but does not seek medical or health records, retirement or benefit documents, tax documents, or anything related to employment benefits. Plf. Br. at 4. Schultz argues that this information is relevant because during the investigation of Schultz's alleged loan to a Wells Fargo customer, Wells Fargo believed "everything" said by Johnson and "disregarded most of what Schultz said." *Id*. Schultz fails to demonstrate why nearly every single employment record, including salary information, is relevant to the claims in this lawsuit or is reasonably calculated to lead to admissible evidence.

The Court finds that any records in Johnson's file that pre-date Johnson's report regarding Schultz and that relate to the character for truthfulness or honesty of Johnson might lead to admissible evidence and are discoverable. Wells Fargo represents to the Court that it has already produced Johnson's formal discipline and performance reviews, among other documents. To the extent there are any additional documents in Johnson's personnel file that relate to or reflect on Johnson's character for truthfulness or honesty, they are ordered produced. Plaintiff's motion is denied with respect to all other information contained in Johnson's personnel file.

### F.  Requests 4a, 4b, and 4c: Records of Compensation and Benefits

Schultz argues that certain records relating to compensation and benefits paid to the Branch Manager 1 at the East Lake Grove branch (the branch to which she was transferred in 2009) and Branch Manager 4 at the Hollywood/Rose City branch (her original branch) are relevant to her damages calculation of lost bonus pay. Schultz moves to compel all documents that evidence the total amount of compensation and benefits paid to the Branch Manager 1 at the

Page 9 – Opinion and Order

East Lake Grove branch for the years 2008, 2010, and 2011 and the Branch Manager 4 at the Hollywood/Rose City branch for 2009 and 2010. Wells Fargo argues that such information relates to a "pay disparity" claim that Schultz has not brought in this case and that, therefore, Schultz is not entitled to "comparator information about her peers' compensation." Def. Br. at 8-9.[6]

Schultz alleges, among other things, that she was transferred from the Hollywood/Rose City branch to the East Lake Grove branch in retaliation for taking protected FMLA leave. She alleges that although her salary was maintained, this transfer led to a decrease in bonus potential. The records sought by Plaintiff are not sought to support a "pay disparity" claim, but are sought as relevant to her damages calculation. The records sought are relevant, narrowly tailored, and do not appear unreasonably burdensome to produce. Wells Fargo need not produce "all" documents relating to the requested compensation and benefit information, but must produce sufficient documents for Schultz to be able to determine the amount of salary, bonus, and other benefits received in the specified positions during the requested years. To protect private information, Wells Fargo may redact the names, addresses, social security numbers, and other identifying information from the records before producing them, and can produce such documents under the protective order.

### G.  Request 5a: Documents Relating to Schultz's Transfer and Alleged Demotion

Schultz moves to compel any and all documents relating to the decision to transfer her from Branch Manager 4 to Branch Manager 1, including, among other specified items, any communications discussing Wells Fargo's policies relating to exceeding position compensation

---

[6] In its response to Plaintiff's Fourth Request for Production of Documents, Wells Fargo objects to the request for production with the same litany of objections it proffered in response to all of the requests, and the Court overrules those "boilerplate" objections for the same reasons as discussed in Request 2a.

with regard to Schultz's transfer. Schultz's query preceding her specific request[7] is unclear, speculative, and does not appear related to the documents that she requests be compelled.

The objections lodged by Wells Fargo in its response to Plaintiff's document request are the same "boilerplate" list of objections discussed and rejected by this Court in its discussion of Request 2a, with the addition of an objection that this request seeks proprietary and/or trade secret information.

The Court overrules these overbroad objections. Documents relating to the decision to transfer Schultz to a new branch with a new job title are relevant and reasonably calculated to lead to the discovery of admissible evidence. The request is not vague, ambiguous, overbroad, unduly burdensome, and does not seek information relating to a third party. Further, Wells Fargo fails to demonstrate how documents relating to the decision to transfer Schultz are trade secret or proprietary information. Wells Fargo is ordered to produce the requested documents that are in its possession, custody, or control and have not previously been produced. The Court specifically notes, however, that much of what Schultz seeks appears to be email communication and other ESI, and, as discussed above, if such information is not in the possession, custody, or control of Wells Fargo, it would not be included in this Order.

## H.  Request 6

Schultz moves to compel documents that relate to Wells Fargo's policies or guidelines that were in effect in November and December of 2009 to determine whether an employee shall be deemed eligible for rehire by Wells Fargo. Schultz states that there was deposition testimony that Plaintiff's designation as ineligible for rehire may have been from a "fill-in" software

---

[7] Schultz queries: "How big of a problem, and how big of a customary disparity existed, when Trupp chose to pay Schultz her base salary from her store manager 4 position even though she was placed into the position of store manager 1?" Plf. Br. at 5.

program. Schultz was terminated in November 2009, and she fails to demonstrate why the policies in effect in December 2009 would be relevant to her designation as not eligible for rehire (*e.g.*, she fails to identify whether her coding occurred in December 2009). Thus, her motion is denied without prejudice with respect to policies or guidelines in effect in December 2009. If Schultz can make a showing why those policies are relevant, they may be ordered produced.

Wells Fargo objects that the requested information, even from November 2009, is irrelevant because Schultz has not alleged a failure-to-hire claim. Wells Fargo also argues that Schultz cannot timely assert that her status as ineligible for rehire was a retaliatory decision in violation of the FMLA because Schultz did not include such an allegation in her Amended Complaint and cannot timely do so now. Notably, this allegation is included in Schultz's proposed Second Amended Complaint. Wells Fargo's objections are not well taken. The information is relevant to Schultz's claim of retaliatory conduct based on her taking protected medical leave. Schultz's motion is granted with respect to the policies or guidelines in effect in November 2009 relating to whether an employee shall be deemed eligible for rehire after termination.

## CONCLUSION

Plaintiff's Motion to Compel (Dkt. 21) is GRANTED IN PART AND DENIED IN PART. Defendant is ordered to produce documents in its possession, custody, or control as set forth herein.

**IT IS SO ORDERED**.

DATED this 29th day of April, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge