# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **DEBRA A. SCHULTZ**, By and Through her conservator, STEVE B. MORRIS, | Case No. 3:11-cv-1467-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION**, | |
| Defendant. | |

Timothy C. Bennett, Timothy Bennett, PC, 4248 Galewood, Lake Oswego, Oregon, 97035. Attorneys for Plaintiff.

Leah C. Lively and Amanda A. Bolliger, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., The KOIN Center, 222 SW Columbia Street, Suite 1500, Portland, Oregon, 97201. Attorneys for Defendant.

**SIMON, District Judge.**

Plaintiff Debra Schultz ("Plaintiff" or "Schultz") filed her First Amended Complaint on November 17, 2011. The parties then engaged in discovery and depositions. Schultz now moves for leave to file a Second Amended Complaint. Dkt. 18. Wells Fargo opposes the motion as

untimely, prejudicial, futile, and in violation of the Local Rules. For the reasons discussed below, Plaintiff's motion to amend is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

### A.  First Amended Complaint

Schultz filed her original Complaint on November 4, 2011, in Multnomah County Circuit Court. Although Wells Fargo represents to the Court that Schultz filed her First Amended Complaint on the same day as her original Complaint, Def. Br. at 3, that assertion is incorrect. According to the Multnomah County Circuit Court docket, Schultz filed her First Amended Complaint on November 17, 2011. Schultz's First Amended Complaint was filed before any discovery or depositions had been taken.

The principal facts alleged in the First Amended Complaint are as follows: Schultz was employed by Wells Fargo for more than 30 years, starting as a teller and receiving promotions over the years until she reached the position of branch manager. Schultz took approved medical leave for approximately three months beginning in April 2007. Schultz also took approximately 12 weeks of approved medical leave beginning in April 2008, when she underwent an above-the-knee leg amputation. After returning from her 2008 medical leave, Wells Fargo retaliated against Schultz, interfered with her leave rights, and did not offer her the same support and confidence she had received before her medical leave. Schultz asserts that she was inappropriately questioned about her private medical and personal information by Debi Klinetobe, the supervisor of Schultz's direct supervisor, Mark Trupp. Schultz complained about this conduct to Wells Fargo's then-Human Resources Consultant, Theresa Kraljev, who abruptly cut off Schultz's complaint with words to the effect that human resources already knew about it and not to worry about it.

Page 2 – Opinion and Order

Schultz further alleges that Wells Fargo had a "mindset" against Schultz, held branch management meetings in places Schultz could not attend because of her wheelchair, improperly "wrote her up" because her branch had not met its performance goals (she refused to sign the write up), and that Trupp told Schultz that she needed to agree to a demotion and transfer or she would lose her job. This transfer caused additional problems for Schultz, including not being able to use the restroom the entire day and performing tasks for which she was not trained, but she did the best she could because she was afraid Wells Fargo wanted to terminate her employment or force her to quit. Sensitive to performance goals, Schultz alleges that she wrote up an assistant manager in her new branch for failing to meet sales goals. Shortly thereafter, that assistant manager reported to Kraljev that Schultz had loaned personal funds to a customer of Wells Fargo.

Schultz asserts that she gave or loaned $200 to a long-term Wells Fargo customer who has special needs and mental challenges and previously received special accommodation from Wells Fargo. Schultz asserts that she did not care if the $200 was ever repaid. She alleges that the $200 loan was a pretextual reason given by Wells Fargo for her termination and that her termination was really in retaliation for her taking medical leave.

In her First Amended Complaint, Schultz asserted four claims for relief: (1) Family Medical Leave Act ("FMLA") interference; (2) FMLA retaliation; (3) retaliation for opposing actions in violation of the FMLA; and (4) wrongful termination.

**B. Proposed Second Amended Complaint**

Schultz's proposed Second Amended Complaint adds approximately ten pages of alleged facts. The proposed new facts include: (1) details regarding Schultz's conservatorship; (2) additional facts relating to the medical leave she took in 2007 and 2008; (3) new allegations

that Schultz took medical leave in 2009 and the details relating to that leave; (4) new allegations regarding communications by and between Wells Fargo employees relating to Schultz; (5) new allegations relating to communications between Wells Fargo and Schultz relating to her medical leave; (6) new allegations relating to communications between Schultz and her doctors relating to her medical leave; (7) additional general facts relating to Schultz's employment history with Wells Fargo, including the lack of previous disciplinary actions against her; (8) additional details regarding the write-up she received for failing to meet sales goals and identifying that write-up as a "Memorandum of Understanding;" (9) additional details regarding Schultz's transfer to the East Lake Grove branch and the compensation effects of that transfer; (10) allegations that upon Schultz's termination Wells Fargo designated her as not eligible for rehire; (11) additional allegations relating to the report and subsequent investigation by Wells Fargo of Schultz's alleged loan to a customer; and (12) allegations relating to conduct of counsel during deposition scheduling in this case. Schultz also proposes adding a claim for punitive damages. No additional claims under the FMLA are proposed.

## STANDARDS

Federal Rule of Civil Procedure 15(a) provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The court should apply the rule's "policy of favoring amendments ... with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks omitted). In determining whether to grant a motion to amend, the court should consider bad faith, undue delay, prejudice to the opposing party, futility of amendment, and prior amendments to the complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Futility alone can justify denying an amendment. *Id.*

**DISCUSSION**

Wells Fargo argues that Schultz has unduly delayed in seeking the amendment; that the amendment will cause substantial prejudice to Wells Fargo; that the amendment is futile; and that Schultz failed to comply with the Local Rules in filing her motion. Wells Fargo also notes that Schultz has previously amended the Complaint. As noted, approximately two weeks after the original Complaint was filed, Schultz filed her Amended Complaint.

**A.  Bad Faith**

Wells Fargo does not argue in its brief that Schultz acts in bad faith in seeking to amend her complaint, but does include a chart that references certain proposed amendments and argues they are made in bad faith. Dkt. 26-1, Addendum A. The Court has reviewed Wells Fargo's chart and the proposed amendments and does not find any support for the contention that Schultz is acting in bad faith. Thus, this factor does not weigh against permitting further amendment.

**B.  Undue Delay**

Wells Fargo is correct that Schultz could have included at least some of these allegations sooner, although under federal notice pleading standards the level of factual detail included in the proposed Second Amended Complaint is not required. Delay, by itself, however, does not justify denying leave to amend. *DCD Programs*, 833 F.2d at 186. Further, many of the new facts alleged appear to be have been learned during discovery, and the full implications of some of the new facts alleged (even if the facts themselves were known earlier) were likely not apparent until after discovery. Additionally, the motion to amend was filed six weeks before discovery closes and seven weeks before dispositive motions are due, allowing sufficient time for any additional discovery by Wells Fargo that may be required. Thus, the Court does not find that there was undue delay in filing the proposed amendment.

## C.  Prior Amendments

Although Schultz previously amended her complaint, that amendment was filed shortly after the original filing and necessarily could not have included any facts learned during the course of discovery. Under these circumstances, the fact of a previous amendment does not weigh against further amendments.

## D.  Prejudice and Futility

Wells Fargo argues that it will be prejudiced by the proposed amendments and also argues that many of the proposed amendments are irrelevant and time-barred and, therefore, futile. There is significant overlap in the proposed amendments that Wells Fargo argues are futile and prejudicial and, thus, these factors will be addressed together.

### 1.  Wells Fargo's arguments relating to prejudice

Wells Fargo argues that it will be prejudiced by the proposed amendment because it will be required to engage in additional and costly discovery and that it has lost the ability to develop and preserve relevant evidence, including documentary evidence. Def. Br. at 7-8. Many of the new allegations simply provide further detail of what were more general factual allegations in the First Amended Complaint. For example, the First Amended Complaint alleged Schultz was written up approximately six or seven months after returning from her 2008 medical leave because her branch failed to meet its performance goals. First Am. Compl. ¶ 12. The proposed Second Amended Complaint adds more detail to this allegation, identifying that write-up as the "Memorandum of Understanding" dated February 20, 2009. Prop. Second Am. Compl. ¶ 22. Wells Fargo argues that this change will require it to re-depose Schultz. Wells Fargo's argument is not persuasive—the allegations in the First Amended Complaint put Wells Fargo on notice about this document, even though the document was not specifically identified by name, and Wells Fargo had sufficient notice to question Schultz about it during her deposition. There are

Page 6 – Opinion and Order

many similar additional factual details proposed to be added in the Second Amended Complaint that do not require an additional deposition of Schultz.

Wells Fargo also asserts that many of the proposed new facts are prejudicial because of "lost evidence," including "lost records." Dkt. 26-1, Addendum A. Wells Fargo has not described with specificity which documents have been lost, how or when they were lost, nor has it explained why such documents were not preserved under Wells Fargo's legally-required document hold obligations that were triggered as a result of this litigation. *See, e.g., Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."). Most of the facts for which Wells Fargo asserts prejudice from "lost records" are directly relevant to this case, and it appears that documents relating to those facts should have been preserved to avoid spoliation.

### 2. Wells Fargo's arguments of futility of the pre-November 4, 2008 allegations

Schultz filed her original complaint on November 4, 2011. Wells Fargo argues that the factual allegations of conduct by Wells Fargo before November 4, 2008, are time barred based on the three-year statute of limitations for "willful" violations of the FMLA.[1] Wells Fargo asserts that proposed paragraphs 8-10, 12-15, 17-20, and 69 are time-barred and thus futile. Wells Fargo's arguments are unpersuasive for several reasons.

First, several of the proposed allegations disputed by Wells Fargo as time-barred provide only general factual background and are not allegations of violations of the FMLA by Wells Fargo. These include proposed paragraph 8 (Schultz received approved medical leave for surgery, expected stents, and awoke to the surprise of having had an amputation); paragraph 9

---

[1] For purposes of this motion only, Wells Fargo assumes the three-year limitations period for willful conduct applies, as opposed to the two-year limitations period.

(Wells Fargo approved Schultz's medical leave from March 1, 2008 through June 1, 2008, Trupp considered Wells Fargo's classification of medical leave to be the same type of leave as FMLA, with the same rights, Wells Fargo's policies do not have a separate leave entitled "FMLA Leave" but offer a 12-week job reinstatement period with its other leave types, including "Medical Leave"); paragraph 13 (describing Schultz's communications with her doctor, her doctor's communications with Wells Fargo, and stating that Wells Fargo approved additional medical leave through July 13, 2008, and that Schultz's doctor released Schultz to work on June 30, 2008); paragraph 14 (Schultz returned to work in early July, 2008); and paragraph 17 (Klinetobe sent an email recounting her conversation with Schultz). These general factual allegations do not assert alleged violations by Wells Fargo, rendering Wells Fargo's statute of limitations argument illogical. *See, e.g., Haley v. Comty. Mercy Health Partners*, No. 3:11-cv-232, 2013 WL 322493, at *16 (S.D. Ohio Jan. 28, 2013) (in FMLA claim, defendant's statute of limitations argument "illogical" when based on asserted fact, not "violation").

Second, as noted above in discussing the arguments relating to prejudice, some of the newly proposed allegations contain further detail about allegations already asserted in the First Amended Complaint. Providing greater detail about an existing allegation is not futile. These allegations include the portion of paragraph 15 relating to Klinetobe's questioning of Schultz; paragraph 19 (describing in further detail the conversation between Schultz and Kraljev regarding the alleged inappropriate questioning of Schultz by Klinetobe and adding information obtained Kraljev's journal); and paragraph 20 (alleging a few more facts relating to Wells Fargo's holding of management meetings on the second floor of the branch building, where Schultz physically could not attend).

Third, for those proposed allegations that allege facts that could be construed as additional instances of misconduct by Wells Fargo that were not included in the First Amended Complaint and that may be considered violations under Schultz's existing FMLA claims, such allegations are not futile. Schultz has not alleged any new claims other than the punitive damages claim (discussed below). For the newly proposed factual allegations that might be considered a new violation under Schultz's existing FMLA claims, Wells Fargo has not demonstrated in its briefing on this motion that there is no circumstance under which the disputed factual allegations might be admissible, rendering the alleged fact futile at this stage in the proceedings. For example, such allegations might be admissible under a continuing violations theory or to support a claim of punitive damages. *See e.g.*, *Packard v. Continental Airlines, Inc.*, No. 01-4013, 2001 WL 1623295, at *2 (10th Cir.2001) (assuming without deciding continuing violations theory applies to FMLA claims); *Robinson v. U.S. Bancorp*, No. CV-99-1723-ST, 2000 WL 435468, at *5 (D. Or. April 20, 2000) ("When asserting a claim for punitive damages arising from an illegal termination, a party may rely on all relevant conduct concerning the termination . . . . even if those actions fell outside the effective date of the . . . statute.").

Amendments are to be freely granted, and an argument that a proposed new fact alleging a potential violation of the FMLA by Wells Fargo might not be admissible evidence or is time-barred is not sufficient to overcome the "extreme liberality" with which proposed amendments must be analyzed. *DCD Programs*, 833 F.2d at 186. This is an argument better left to a different pretrial or trial motion or for objection at trial.

### 3.  Wells Fargo's arguments of futility of the pre-April 5, 2010 allegations

Wells Fargo argues that, because Schultz filed her motion for leave to file the Second Amended Complaint on April 5, 2013, Schultz has improperly alleged new "claims" from before

April 5, 2010, which, Wells Fargo argues, are time-barred and futile unless they relate-back to the original complaint. Def. Br. at 10.

The paragraphs Wells Fargo disputes as futile because they include allegations from before April 5, 2010, are paragraphs 21-23 and all allegations that Schultz took approved medical leave in 2009. Wells Fargo's arguments are unpersuasive for the same reasons discussed above in relation to the pre-November 4, 2008 allegations. The pre-April 5, 2010, allegations include either general facts, further details relating to facts previously pled, or, to the extent they allege facts of a violation of the FMLA by Wells Fargo not previously pled, whether such facts are admissible is not properly presented in the current motion. Further, the proposed new allegations that Schultz took approved medical leave in 2009 are not allegations of a violation by Wells Fargo and are not subject to the statute of limitations. *See, e.g.*, *Haley*, 2013 WL 322493, at *16 (allegation that FMLA leave was taken at a particular time is not an allegation of a violation by the employer or an adverse action and is not subject to the statute of limitations).

### 4.  Amendments the Court shall not permit

The Court has carefully reviewed the proposed amendments and finds a few of them to be unfairly prejudicial, irrelevant, futile, or otherwise improper. Those amendments shall not be permitted. The improper proposed amendments are discussed below, in turn.

The Court denies Plaintiff's motion to amend to add proposed paragraph 3, which describes: (1) the details of Schultz's conservatorship; (2) certain Oregon law relating to conservatorships, Medicaid, and Special Needs Trusts; (3) that Schultz's daughters took advantage of her financially; and (4) that one daughter has a drug conviction. The Court finds this paragraph is irrelevant and potentially harmful to third parties who are not able to file a motion to strike the allegations. It is irrelevant to the pending claims because the allegations are

Page 10 – Opinion and Order

not related to Schultz's employment claims, including the alleged conduct of the third parties and Oregon's law relating to a Special Needs Trust and Medicaid. Whether they might be admissible at trial for some other purpose is not resolved at this time.

The Court also denies Plaintiff's motion to amend to add the first part of the second sentence of paragraph 38, "On information and belief, Johnson has not held any jobs for more than three years." This allegation is similarly irrelevant and potentially harmful to a third party.

The Court also denies Plaintiff's motion to amend to add paragraph 39 (allegations relating to the conduct of Wells Fargo's counsel during deposition scheduling) and the last sentence of paragraph 75 (allegations relating to Wells Fargo foreclosing on Schultz's home after the filing of the Complaint in this action, after Schultz failed to remain current on her mortgage payments). These allegations involve conduct that occurred after the filing of the Complaint. The Court finds that these allegations are not relevant to Schultz's employment claims and are futile. The Court also notes that such allegations are not properly contained in a motion for an amended pleading, but should have been raised in a motion for a supplemental pleading. *See* Fed. R. Civ. P. 15(d) (a supplemental pleading is the mechanism under which a party may allege any transaction, occurrence, or event that happened after the date of the pleading to be supplemented).

The Court finds that Wells Fargo fails to show that the remaining amendments are unfairly prejudicial, irrelevant, or futile.

**E.  Punitive Damages Claim**

Schultz includes in her proposed Second Amended Complaint a claim for punitive damages under Oregon law. Under Oregon law, punitive damages are allowed if plaintiffs prove "by clear and convincing evidence that the party against whom punitive damages are sought has

acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." Or. Rev. Stat. § 31.730(1). Wells Fargo argues that Schultz fails to allege facts showing that Wells Fargo acted with malice or reckless indifference and that the punitive damages claim is "subject to dismissal" and is, therefore futile. Def. Br. at 15. Because Schultz has met the liberal pleading and amendment standards established by Federal Rules of Civil Procedure 8 and 15(a), Wells Fargo's argument is unpersuasive, and Plaintiff's motion is granted with respect to the proposed claim for punitive damages.

## F.  Failure to Comply with the Local Rules

Schultz filed a half-page memorandum in support of her Opposed Motion for Leave to File Second Amended Complaint. Schultz provides the Court with extremely limited argument and no legal authority in seeking her amendment. Therefore, Schultz's motion fails to comply with Local Rule 7-1(c).

Wells Fargo also argues that Schultz failed to provide Wells Fargo with a copy of the proposed amended complaint before filing the motion and thus failed properly to confer. Although the Local Rules do not specifically require a copy of a proposed amended complaint be provided to opposing counsel for a proper conferral, this Court considers doing so to be good practice. Regardless of whether a copy of a proposed amended complaint is provided to opposing counsel, however, to properly confer the moving party must at least describe the proposed changes in sufficient detail to allow the opposing party to consider them, and give opposing counsel sufficient time to respond the proposed changes. If opposing counsel does not respond in a timely manner, then the moving party can explain that lack of cooperation in its conferral certification. Here, counsel for Schultz does not provide information regarding the substance of

his conferral with counsel for Wells Fargo, beyond stating that he could not provide a copy of the proposed amended complaint to Wells Fargo before filing the motion and representing that Wells Fargo might withdraw its opposition after its counsel has had sufficient time to review the proposed changes. This is insufficient compliance with Local Rule 7-1(a).

The current Motion for Leave to File a Second Amended Complaint was filed along with a Motion to Compel, and neither motion complies with Local Rule 7-1. As this Court noted in its Opinion and Order on the Motion to Compel, the Court recently set a revised discovery and dispositive motion schedule in order to keep this case moving forward. Therefore, the Court will consider this Motion on the merits. No further motions of any kind, however, are likely to be accepted that do not comply with the Local Rules.

CONCLUSION

Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. 18) is GRANTED IN PART AND DENIED IN PART. Plaintiff may file a Second Amended Complaint and include the new allegations proposed, with the exception of those specifically rejected herein.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge